IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Robert Ducharme, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 6:20-1620-HMH |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| Madewell Concrete, LLC and Kevin Johnston, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on cross-motions for summary judgment. Plaintiff Robert Ducharme ("Plaintiff") filed a motion for partial summary judgment. Defendants Madewell Concrete, LLC ("Madewell") and Kevin Johnston ("Johnston") (collectively "Defendants") filed a motion for summary judgment. For the reasons set forth below, the court grants Plaintiff's motion and grants in part and denies in part Defendants' motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This cases arises out of Plaintiff's employment with Madewell in Greenville, South Carolina. (Compl., generally, ECF No. 1.) Madewell is in the business of performing residential concrete work. (Defs. Mem. Supp. Mot. Summ. J. 1, ECF No. 23-1.) Madewell primarily constructs and remodels residential driveways and walkways. (Id. at 1-2, ECF No. 23-1.) Johnston is the sole owner of Madewell. (Id. at 2, ECF No. 23-1); (Pl. Mot. Part. Summ. J. Ex. 1 (Johnston Depo. 6), ECF No. 22-2.) Plaintiff was hired as an "Operations Manager" for Madewell in April 2019. (Defs. Mot. Summ. J. Ex. F (Offer Letter 2), ECF No. 23-7.) Plaintiff's responsibilities included "[c]ommunicating job expectations and schedule to the crew

1

leader, communicating with customers throughout the process of selling/production, marketing Madewell in the neighborhoods [Madewell was] working in, and selling referral projects/walkup estimates."  (Id. Ex. F (Offer Letter 2), ECF No. 23-7.)

Johnston described Plaintiff as the "conductor" of the job site.  (Pl. Mot. Part. Summ. J. Ex. 1 (Johnston Depo. 12-13), ECF No. 22-2.)  Plaintiff's primary focus, according to Johnston, was managing production.  (Id. Ex. 1 (Johnston Depo. 12-15), ECF No. 22-2.)  Plaintiff was tasked with ensuring the completion of each job, and his primary responsibility was to schedule and coordinate subcontractors and suppliers.  (Id. Ex. 1 (Johnston Depo. 12-15), ECF No. 22-2.)  In addition to production, Plaintiff performed sales and marketing work. (Id. Ex. 1 (Johnston Depo. 12-14), ECF No. 22-2.)  Johnston described Plaintiff's sales role as organic and involving both active solicitation and marketing in neighborhoods in which Madewell was working as well as handling referrals and walk-ups.  (Id. Ex. 1 (Johnston Depo. 12-14), ECF No. 22-2.)

According to Plaintiff, a typical workday involved meeting with customers at job sites to review plans, walking subcontracting crews through job expectations, checking on crews and the status of jobs, scheduling upcoming jobs, coordinating with Madewell's sales team, and performing marketing activities such as setting up yard signs and passing out fliers.  (Defs. Mot. Summ. J. Ex. A (Ducharme Depo 9-11), ECF No. 23-2.)  Johnston testified that Plaintiff was expected to allocate 70 percent of his time on production and 30 percent of his time on sales but that he would defer to Plaintiff as to how much time he actually spent in each role.  (Pl. Mot. Part. Summ. J. Ex. 1 (Johnston Depo. 16-18), ECF No. 22-2.)  Plaintiff testified that 90 to 95 percent of his time was dedicated to production and 5 to 10 percent of his time was dedicated to sales.  (Id. Ex. 2 (Ducharme Depo. 9), ECF No. 22-3.)

Plaintiff resigned from Madewell on December 5, 2019, and began working for Imperium Concrete, another concrete company. (Compl. ¶ 16, ECF No. 1); (Pl. Resp. Ex. 2 (Ducharme Depo. 13-16), ECF No. 24-2.) Upon his resignation, Plaintiff returned his company-issued iPad to Madewell. (Pl. Resp. Ex. 2 (Ducharme Depo. 16), ECF No. 24-2.) The iPad had been used to perform Plaintiff's job duties, which included checking Plaintiff's work email account, scheduling jobs, and drawing plans. (Defs. Mot. Summ. J. Ex. A (Ducharme Depo. 5), ECF No. 23-2.) Additionally, Plaintiff used the iPad to access his personal email account. (Compl. ¶ 15, ECF No. 1); (Pl. Resp. Ex. 2 (Ducharme Depo. 19), ECF No. 24-2.)

On December 7, 2019, after the iPad was returned, Plaintiff's former supervisor, Nick Dalpiaz ("Dalpiaz"), discovered an email on the iPad that was sent from Plaintiff's personal email address to Plaintiff's new Imperium Concrete email address. (Defs. Mot. Summ. J. Ex. D (Dalpiaz Depo. 12-14), ECF No. 23-5); (Pl. Resp. Ex. 2 (Ducharme Depo. 20-22), ECF No. 24-2.) The email, dated December 2, 2019, contained an image of an Imperium Concrete business card bearing Plaintiff's name. (Defs. Mot. Summ. J. Ex. D (Dalpiaz Depo. 13, 19-20), ECF No. 23-5); (Pl. Resp. Ex. 2 (Ducharme Depo. 21-22), ECF No. 24-2.) Dalpiaz used his cell phone to take a picture of the email on the iPad and reported his discovery to Johnston. (Defs. Mot. Summ. J. Ex. D (Dalpiaz Depo. 13-18), ECF No. 23-5.) On March 3, 2020, Defendants filed a lawsuit against Plaintiff and Imperium Concrete. (Defs. Mem. Supp. Mot. Summ. J. 4, ECF No. 23-1); (Defs. Mot. Dismiss Ex. A (State Court Complaint), ECF No. 9-2.) The cell phone picture of Plaintiff's email taken by Dalpiaz was attached to the complaint. (Defs. Mot. Dismiss Ex. A (State Court Complaint 18), ECF No. 9-2.)

3

Plaintiff alleges that Defendants deliberately misclassified him as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA").  (Compl. ¶¶ 9-13, ECF No. 1.)  According to Plaintiff, he regularly worked 10 or more hours of overtime per week.  (Pl. Mot. Part. Summ. J. Ex. 2 (Ducharme Depo. 13), ECF No. 22-3.)  Believing that Plaintiff was an exempt employee, Madewell did not keep a record of Plaintiff's time.  (Id. Ex. 5 (Resp. Request Admit ¶ 12), ECF No. 22-6.)  From the start of his employment in April 2019 until October 21, 2019, Plaintiff was paid on a commission basis.  (Id. Ex. 1 (Johnston Depo. 18-19), ECF No. 22-2); (Id. Ex. 2 Ducharme Depo. 8-9), ECF No. 22-3); (Defs. Mot. Summ. J. Ex. F (Offer Letter 2), ECF No. 23-7.)  From October 21, 2019, until his resignation, Plaintiff was paid on a salary basis.  (Defs. Mot. Summ. J Ex. H (Pay Change Letter 2), ECF No. 23-9); (Pl. Mot. Part. Summ. J. Ex. 1 (Johnston Depo. 18-19), ECF No. 22-2); (Id. Ex. 2 Ducharme Depo. 8-9), ECF No. 22-3.)

On April 24, 2020, Plaintiff filed the instant case against Defendants, alleging claims for violations of (1) the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, et seq., (2) the South Carolina Homeland Security Act ("SCHSA"), S.C. Code Ann. § 17-30-10, et seq., and (3) the FLSA, 29 U.S.C. § 201, et seq.  (Compl., generally, ECF No. 1.)  Plaintiff filed a motion for partial summary judgment on April 23, 2021.  (Pl. Mot. Part. Summ. J., ECF No. 22.)  On the same day, Defendants filed a motion for summary judgment.  (Defs. Mot. Summ. J., ECF No. 23.)  On May 4, 2021, Plaintiff filed a response to Defendants' motion.  (Pl. Resp., ECF No. 24.)  On May 7, 2021, Defendants filed a response to Plaintiff's motion.  (Defs. Resp., ECF No. 26.)  On May 11, 2021, Plaintiff filed a reply to Defendants' response in opposition to Plaintiff's motion.  (Pl. Reply, ECF No. 29.)  This matter is now ripe for review.

## II. Discussion of the Law

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).

### B. The FLSA Overtime Claim

"The FLSA generally requires that employers pay overtime in the amount of one-and-a-half times an employee's 'regular rate' for each hour their employees work in excess of 40 per week." Calderon v. GEICO Gen. Ins. Co., 809 F.3d 111, 121 (4th Cir. 2015) (citing

29 U.S.C. § 207(a)(1)). "Specific categories of employees are, however, excluded from coverage." IntraComm, Inc. v. Bajaj, 492 F.3d 285, 291 (4th Cir. 2007). Relevant here, the FLSA exempts "any employee employed in a bona fide executive, administrative, or professional capacity . . . or in the capacity of outside salesman." 29 U.S.C. § 213(a)(1). Both parties have moved for summary judgment on Plaintiff's FLSA overtime claim. (Pl. Mem. Supp. Mot. Part. Summ J., generally, ECF No. 22-1); (Defs. Mem. Supp. Mot. Summ J. 13-23, ECF No. 23-1.) The central question before the court is whether Plaintiff qualified for an exemption to the FLSA's overtime pay requirements.[1]

"Whether an employee is exempt from the FLSA's overtime requirements is a mixed question of law and fact." Williams v. Genex Servs., LLC, 809 F.3d 103, 109 (4th Cir. 2015). "[T]he question of how [employees] spen[d] their working time . . . is a question of fact, but the ultimate question of whether the exemption applies is a question of law." Calderon, 809 F.3d at 120 (internal quotation marks and citations omitted). When making the determination of whether an employee is exempt from the FLSA's overtime provisions, the exemption at issue should be given a "fair (rather than a 'narrow') interpretation." See Encino Motorcars, LLC v. Navarro, 138 S. Ct. 1134, 1142 (2018). "[E]mployers must prove application of the exemptions by clear and convincing evidence." Calderon, 809 F.3d at 121 (citation omitted).

---

[1] Defendants do not dispute Plaintiff's ability to prove the amount or extent of his overtime work. (Defs. Mem. Supp. Mot. Summ. J., generally, ECF No. 23-1); (Defs. Resp., generally, ECF No. 26.) See Bailey v. Cty. of Georgetown, 94 F.3d 152, 157 (4th Cir. 1996); Pforr v. Food Lion, Inc., 851 F.2d 106, 109 (4th Cir. 1988); Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986).

**1. Administrative Exemption**

Defendants first argue that Plaintiff was "employed in a bona fide administrative capacity" under 29 U.S.C. § 213(a)(1). (Defs. Mem. Supp. Mot. Summ. J. 16-19, ECF No. 23-1); (Defs. Resp. 4-9, ECF No. 26.) The administrative exemption covers employees:

(1) Compensated on a salary or fee basis . . . at a rate of not less than [$455][2] per week;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

In order to satisfy the first element, Defendants must prove Plaintiff was compensated on either a "salary basis" or a "fee basis." See 29 C.F.R. § 541.200; id. § 541.602; id. § 541.605. It is undisputed that Plaintiff was paid on a commission basis from April 2019 until October 21, 2019. Specifically, Plaintiff was paid either four or eight percent of gross sales produced. (Defs. Mot. Summ. J. Ex. F (Offer Letter 3), ECF No. 23-7.) Commission earned from a job was paid to Plaintiff in the pay period following the period in which the job was completed and all payments were received. (Id. Ex. F (Offer Letter 3), ECF No. 23-7.) Defendants argue that Plaintiff's commission structure constitutes either a "salary basis" or a "fee basis." (Defs. Mem. Supp. Mot. Summ. J. 16-19, ECF No. 23-1); (Defs. Resp. 6-7, ECF No. 26.)

The regulations define "salary basis" as follows:

---

[2] The salary threshold was subsequently changed to $684 per week. However, the parties agree that $455 per week is the relevant figure here.

> An employee will be considered to be paid on a "salary basis" within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602(a).  It is undisputed that while Plaintiff was paid on a commission basis, the amount of his payments were not predetermined.  See Charbonneau v. Mortg. Lenders of Am. L.L.C., 487 F. Supp. 3d 1081, 1088 (D. Kan. 2020) ("The fact that the formula was predetermined and agreed upon is irrelevant; the regulations mandate that the amount of compensation received each pay period must be predetermined and agreed upon before the work is performed.") (emphasis in original).  In fact, Plaintiff's commission payments were entirely dependent on the quantity of work performed in the previous pay period.  Therefore, the court finds that Plaintiff was not paid on a "salary basis" during the time period when his pay was commission based.

> An employee is paid on a "fee basis" if:
>
> [T]he employee is paid an agreed sum for a single job regardless of the time required for its completion.  These payments resemble piecework payments with the important distinction that generally a "fee" is paid for the kind of job that is unique rather than for a series of jobs repeated an indefinite number of times and for which payment on an identical basis is made over and over again.

29 C.F.R. § 541.605(a).  Defendants argue that because Plaintiff was paid an agreed percentage for each job, Plaintiff's commission structure amounts to an "agreed sum for a single job." (Defs. Mem. Supp. Mot. Summ. J. 16-17, ECF No. 23-1.)  The court disagrees.

It is undisputed that Plaintiff repeatedly engaged in residential concrete projects for which commissions of a specific percentage were paid over and over.  The court finds that being paid a percent commission for each project is "a series of jobs repeated an indefinite number of

times and for which payment on an identical basis is made over and over again" and does not constitute payment on a "fee basis." See Charbonneau, 487 F. Supp. 3d at 1092; Vivar v. Benjamin's Behav. Health Servs., PLLC, Civ. Act. No. H-18-3060, 2019 WL 6766842, at *3 (S.D. Tex. Dec. 11, 2019) (unpublished); Pierce v. Wyndham Vacation Resorts, Inc., No. 3:13-CV-641-CCS, 2017 WL 4480199, at *5 (E.D. Tenn. Oct. 6, 2017) (unpublished). Therefore, the court finds Plaintiff was not paid on a "fee basis" during the time period in which his pay was commission based.

Accordingly, because Plaintiff's commission based compensation structure did not constitute either a "salary basis" or a "fee basis," Defendants have failed to prove that Plaintiff was exempt from the FLSA's overtime requirements under the administrative exemption from April 2019 until October 21, 2019.

With respect to the time period when Plaintiff was salaried, it is undisputed that Plaintiff was paid a salary of at least $455 per week from October 21, 2019 until his employment ended in December 2019. (See Defs. Mot. Summ. J. Ex. H (Pay Change Letter 2), ECF No. 23-9.) Therefore, the first element of the administrative exemption is satisfied for the time in which Plaintiff was paid a salary. Under the second element, Plaintiff's primary duty must have been "directly related to the management or general business operations" of Madewell. 29 C.F.R. § 541.200(a). An employee's "primary duty" is "the principal, main, major or most important duty that the employee performs," "based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Id. § 541.700(a). To satisfy the "directly related" requirement, "an employee must perform work directly related to assisting

9

with the *running or servicing of the business*, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." Id. § 541.201(a) (emphasis added).

> Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

Id. § 541.201(b). "Section 541.201 draws the distinction between an employee whose primary duty is administering the business affairs and one whose primary duty is to produce the commodity that the business exists to produce. The latter is non-exempt." Gottlieb v. Constr. Servs. & Consultants, Inc., No. 05-14139-CIV, 2006 WL 5503644, at *6 (S.D. Fla. July 24, 2006) (unpublished). The "critical focus" of the second element is "whether an employee's duties involve the running of a business, as opposed to the mere day-to-day carrying out [of the business's] affairs." Calderon v. GEICO Gen. Ins. Co., 809 F.3d 111, 123 (4th Cir. 2015) (internal quotation marks and citations omitted). Further, an employee's importance or indispensability is not dispositive because it is the "'the nature of the work, not its ultimate consequence,' that controls whether the exemption applies." Id. at 129 (quoting Desmond v. PNGI Charles Town Gaming, L.L.C., 564 F.3d 688, 692 (4th Cir. 2009).

Defendants argue Plaintiff's primary duties were directly related to the management or general business operations of Madewell because he "overs[aw] and supervise[d] a concrete construction project from start to finish." (Defs. Resp. 9, ECF No. 26); (Defs. Mem. Supp. Mot. Summ. J. 17, ECF No. 23-1.) The court disagrees. It is undisputed that Plaintiff's primary

duties involved overseeing the work at job sites to ensure each job was completed as planned. Plaintiff's work, therefore, involved carrying out the day-to-day business affairs of Madewell's concrete construction business. In other words, the nature of this work involved producing Madewell's product rather than the running or servicing of Madewell itself. See Calderon, 809 F.3d at 122-129; Desmond, 564 F.3d at 693-95; Gottlieb, 2006 WL 5503644, at *6. Because Plaintiff's duties were not directly related to the management or general business operations of Madewell, the court finds that Defendants have failed to establish that Plaintiff qualifies for the administrative exemption.

## 2. Executive Capacity Exemption

Defendants next argue that Plaintiff was "employed in a bona fide executive capacity" under 29 U.S.C. § 213(a)(1). (Defs. Mem. Supp. Mot. Summ. J. 19-22, ECF No. 23-1.) The executive exemption covers employees:

> (1) Compensated on a salary basis . . . at a rate of not less than [$455][3] per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who ha[ve] the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

---

[3] The salary threshold was subsequently changed to $684 per week. However, the parties agree that $455 per week is the relevant figure here.

11

As noted above, the court finds Plaintiff was not compensated on a "salary basis" during the time in which his pay was commission based. Therefore, Defendants cannot satisfy the first element of the executive exemption from April 2019 to October 21, 2019.

Regardless, no part of Plaintiff's employment with Madewell qualifies for the executive exemption because Defendants cannot satisfy the third element of the exemption. It is undisputed that "Plaintiff did not directly supervise any Madewell employees." (Pl. Mem. Supp. Mot. Part. Summ. J. 6-7, ECF No. 22-1); (Id. Ex. 5 (Defs. Request to Admit ¶ 5), ECF No. 22-6.) However, Defendants argue that Plaintiff's supervision of subcontractors "is the same as if they were employees." (Defs. Mem. Supp. Mot. Summ. J. 21, ECF No. 23-1.) The court disagrees.

"[T]he Department of Labor has made clear, the executive exemption applies only to those who regularly supervise two or more *fellow employees*, not contractors or subcontractors." Hernandez v. Stringer, 210 F. Supp. 3d 54, 60 (D.D.C. 2016) (emphasis in original) (citing U.S. Dep't of Labor Op. Letter FLSA 2007-3, 2007 WL 506576, at *2 (Jan. 25, 2007) ("Only other employees employed by the same employer may be considered when making this determination under the executive exemption; the supervision of employees of independent contractors, subcontractors, or any other 'non-employees' in relation to the employer are not considered for purposes of meeting this test.")). Therefore, because it is undisputed that Plaintiff did not supervise Madewell employees, the court finds that Defendants cannot meet the third element of the executive exemption. Defendants have failed to establish that Plaintiff qualifies for the executive exemption.

### 3. Outside Sales Exemption

Defendants next argue that Plaintiff was "employed in the capacity of outside salesman" under 29 U.S.C. § 213(a)(1). (Defs. Mem. Supp. Mot. Summ. J. 22-23, ECF No. 23-1.) The outside sales exemption covers employees (1) whose primary duty is making sales or "obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer" and (2) "[w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500. Defendants argue that a "portion" of Plaintiff's employment was in an outside sales role. (Defs. Mem. Supp. Mot. Summ. J. 22-23, ECF No. 23-1.) Defendants do not allege, or provide any evidence, that sales were Plaintiff's primary duty. In fact, it is undisputed that Plaintiff's primary duty involved production. The court finds Defendants have failed to prove that Plaintiff qualified for the outside sales exemption.

### 4. Combination Exemption

Finally, Defendants cite the combination exemption in 29 C.F.R. § 541.708 and argue that they are not limited to claiming only one exemption. (Defs. Mem. Supp. Mot. Summ. J. 23, ECF No. 23-1.) However, Defendants fail to allege, much less prove, that Plaintiff "performed a combination of exempt duties" as is required by the combination exemption. See 29 C.F.R. § 541.708; IntraComm, Inc. v. Bajaj, 492 F.3d 285, 292-96 (4th Cir. 2007).

Based on the foregoing, there is no genuine dispute of material fact regarding Plaintiff's specific job duties. Further, Defendants have failed to show by clear and convincing evidence that Plaintiff qualified for an exemption to the FLSA's overtime requirements. Accordingly,

Plaintiff's motion for partial summary judgment on the FLSA claim is granted. Defendants' motion for summary judgment is denied as to the FLSA claim.

### C. The SCA Claim

Defendants move for summary judgment on Plaintiff's claim for violation of the SCA. (Defs. Mem. Supp. Mot. Summ. J. 7-11, ECF No. 23-1.) Section 2701 of the SCA "protects electronic communications from unauthorized access by third-parties." Hately v. Watts, 917 F.3d 770, 783 (4th Cir. 2019) (citing 18 U.S.C. § 2701). Specifically, § 2701 "creates a criminal offense for whoever 'intentionally accesses without authorization a facility through which an electronic communication service is provided' or 'intentionally exceeds an authorization to access that facility,' and by doing so 'obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system.'" Van Alstyne v. Elec. Scriptorium, Ltd., 560 F.3d 199, 204 (4th Cir. 2009) (quoting 18 U.S.C. § 2701(a)(1)-(2)). Section 2707 provides a private cause of action for someone "aggrieved" by a violation of § 2701. 18 U.S.C. § 2707(a).

To prevail under the SCA, a plaintiff must prove that the defendant (1) accessed a system through which electronic communication service is provided without authorization, or had authorization but exceeded its authority in obtaining the information in question; (2) obtained, or altered or prevented access to, a wire or electronic communication while it was in electronic storage; and (3) acted intentionally. See 18 U.S.C. § 2701; see also Skapinetz v. CoesterVMS.com, Inc., No. 8:17-CV-01098-PX, 2019 WL 2579120, at *3 (D. Md. June 24, 2019) (unpublished).

Plaintiff's personal email account constitutes an "electronic communication service." See Hately, 917 F.3d at 790. Additionally, the Fourth Circuit has held that previously delivered and opened emails stored by an electronic communication service constitute "wire or electronic communications" which are in "electronic storage." See id. at 794-98. Therefore, in the instant case, Plaintiff must prove that Defendants (1) accessed Plaintiff's personal email account without authorization, or accessed the account with authorization but exceeded the authority granted; (2) obtained (or altered or prevented access to) an email from the account; and (3) acted intentionally. See 18 U.S.C. § 2701(a).

Based on the record before the court, the court finds there is no evidence that Dalpiaz had the ability and/or means to log in to Plaintiff's personal email account. The evidence before the court is that Plaintiff used the Madewell owned iPad to access both his work and personal email addresses. Further, it is undisputed that the iPad was Madewell's property, and that Plaintiff knew it would have to be returned to Madewell when his employment ceased. Plaintiff voluntarily returned the iPad to Madewell and he had no reasonable or legitimate expectation of privacy concerning the Madewell owned iPad once it was returned. See, e.g., United States v. Simons, 206 F.3d 392, 398 (4th Cir. 2000). While it is clear that Dalpiaz obtained an email from Plaintiff's personal account, the record is devoid of any evidence to support the inference that Dalpiaz accessed the account without authorization. Plaintiff does not allege, or provide evidence, how Dalpiaz could have accessed Plaintiff's personal account had it not been left actively logged in on the iPad. Additionally, there is no evidence or allegation that Dalpiaz knew Plaintiff's personal email address or login information which would have allowed him to access Plaintiff's personal email account. In fact, Plaintiff testified that his personal account

could have been logged in on the iPad when it was returned. (Pl. Resp. Ex. 2 (Ducharme Depo. 33), ECF No. 24-2.) Thus, there is no evidence to support Plaintiff's argument that the personal email account was not logged in on the iPad when he returned it to Madewell.

Based on the foregoing, the court finds there is no genuine issue of material fact to support Plaintiff's argument that Dalpiaz's access was unauthorized. Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's SCA claim.

### D. The SCHSA Claim

Defendants also move for summary judgment on Plaintiff's SCHSA claim. (Defs. Mem. Supp. Mot. Summ. J., 11-13, ECF No. 23-1.) The SCHSA is patterned after Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by Title I of the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. § 2510 *et seq*. See State v. Whitner, 732 S.E.2d 861, 863 (S.C. 2012). Relevant here, both the SCHSA and the ECPA prohibit the intentional interception of electronic communications. S.C. Code Ann. § 17-30-20; 18 U.S.C. § 2511. The critical inquiry in the instant motion for summary judgment is whether any of Plaintiff's personal email communications were "intercepted." For the reasons explained below, the court finds that Defendants did not "intercept" any of Plaintiff's personal email communications.

Both the SCHSA and the ECPA define "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." S.C. Code Ann. § 17-30-15(3); 18 U.S.C. § 2510(4). Research has revealed no relevant case law identifying what constitutes a qualifying "intercept" under the SCHSA, or, more specifically, whether accessing previously sent and delivered emails

constitutes interception. Because no courts have addressed this issue under the SCHSA, and because the SCHSA mirrors the ECPA, the court looks to interpretations of "intercept" under the ECPA. See Whitner, 732 S.E.2d at 864 (looking to federal court interpretations where no South Carolina cases had addressed an issue under the SCHSA "because the Federal Act is substantively the same as South Carolina's Wiretap Act").

Although the Fourth Circuit has not directly ruled on this issue, other circuit "[c]ourts applying the ECPA have consistently held that a qualifying 'intercept' occurs only where the acquisition of the communication occurs contemporaneously with its transmission by its sender." Glob. Pol'y Partners, LLC v. Yessin, 686 F. Supp. 2d 631, 638 (E.D. Va. 2009) (collecting cases). "Thus, interception includes accessing messages in transient storage on a server during the course of transmission, but does *not* include accessing the messages stored on a destination server." Id. (citations omitted). In other words, a qualifying "intercept" under the ECPA "can only occur where an e-mail communication is accessed at some point between the time the communication is sent and the time it is received by the destination server." Id.; see also Konop v. Hawaiian Airlines, Inc., 302 F.3d 868, 878 (9th Cir. 2002). Once the communication is received by the destination server it becomes a "stored communication" under the SCA, as addressed above. See Yessin, 686 F. Supp. 2d at 638; see also Hately, 917 F.3d at 782-797.

Plaintiff does not allege, and the record is devoid of evidence, that Defendants or Dalpiaz somehow intercepted email messages during their transmission either to or from Plaintiff's personal email account before the messages reached their destination. In fact, the only evidence before the court is that on December 7, 2019, Dalpiaz viewed and used his cell

phone to take a picture of an email that had previously been sent from Plaintiff's personal email address and delivered to his Imperium Concrete email address on December 2, 2019. Additionally, the cell phone picture was attached to a complaint on March 2, 2020. This conduct does not constitute an interception under the SCHSA because any alleged interception was not contemporaneous with its transmission. Based on the foregoing, there is no evidence that Plaintiff's personal email communications were intercepted. Accordingly, Defendants' motion for summary judgment is granted as to the SCHSA claim.

### III. Conclusion

Based on the foregoing, the court finds that there are no genuine issues of material fact in this case. Plaintiff's motion for partial summary judgment on the FLSA claim is granted. Defendants' motion for summary judgment is denied as to the FLSA claim and granted as to the claims for violations of the SCA and SCHSA.

It is therefore

**ORDERED** that Plaintiff's motion for partial summary judgment, docket number 22, is granted. The court orders the parties to submit briefs on the calculation of damages for Plaintiff's FLSA claim within 15 days of the date of this order. It is further

**ORDERED** that Defendants' motion for summary judgment, docket number 23, is granted with respect to the SCA and SCHSA claims and denied as to the FLSA claim.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
May 26, 2021